[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was brought by the Plaintiff wife against the Defendant husband for dissolution of their marriage on the ground of irretrievable breakdown. The parties were married on June 12, 1964. The parties' three CT Page 10253 children are now 35, 32 and 25 years of age. There are no minor children of this marriage.
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed forms of orders, and pretrial and post trial memoranda. Based upon the evidence, the court makes the following findings. This action was commenced on March 25, 1998. The court has jurisdiction and all statutory stays have expired. The marriage has irretrievably broken down, and judgment may enter dissolving the marriage on this ground.
The Plaintiff is 57 years of age, and the Defendant is 56. The Plaintiff has numerous medical problems and takes a variety of medications regularly. There is no indication that the Plaintiff is unable to work or generate some income. At the time of the marriage, she was a secretary with a Denver law firm. She has had training as a landscape designer at the New York Botanical Gardens and recently obtained a sales position at Smith and Hawkins.
The Defendant suffers from a psychiatric disorder which, in February 1996, forced him to cease working as a consulting actuary. Prior to his disability, he worked for Coopers Lybrand and though on leave of absence for a part of the time, earned an average of $372,000 per year. He has degrees as a CPA and an actuary, and is a Fellow of the Society of Actuaries. Since February 1996, he has not had any significant employment. From August 1996 to present, he has received $15,510 per month of tax free general disability benefits and $2,619 per month from a KPMG pension. While the Defendant recently began work as a clerk at Barnes and Noble, he encountered difficulty with this position and now works as a billing clerk at Catholic Family Charities. His highest pay rate for this work has been $8.50 per hour. He has been able, and has, prepared tax returns for himself and for the Plaintiff. It is highly unlikely that the Defendant will be able to return to his former career as an actuary or to any other career which would involve a similar degree of stress or provide equivalent income.
The Defendant's disability payments will end in June 2006, or earlier if found capable of working.
The Plaintiff claimed, at trial, that this relationship could be restored but such is not the case. During the marriage, the Defendant was assigned, and accepted, the role of using his talents and of working as hard and as long as necessary to provide money for an extravagant way of life. The Plaintiff pushed and the Defendant responded. The Plaintiff CT Page 10254 encouraged and directed, with the knowledge and acquiescence of the Defendant, years of overspending and there is now little left of the fruits of the Defendant's labor. It is clear that this marriage has irretrievably broken down.
ORDERS:
The court has carefully considered the statutory criteria set forth in General Statutes §§ 46b-81, 46b-82, and the applicable case law in rendering the decisions reflected in the orders that follow:
 1. The marriage of the parties having broken down irretrievably is hereby dissolved.
2. Alimony and Division of Assets:
 The Defendant is receiving nontaxable disability payments from a policy with Pacific Life and Annuity currently in the amount of $15,510 per month, $186,120 per year. Until the Defendant's death, the Plaintiff's death, reduction or cessation of said disability payments, the Plaintiff's remarriage, or cohabitation as provided by statute whichever first occurs, the Defendant shall pay the Plaintiff as alimony fifty percent (50%) of the entire amount of the nontaxable disability income benefit. The amount of said payments shall not be modifiable upward. So long as these payments remain nontaxable to the Defendant, they shall be deemed neither taxable to the Plaintiff for income tax purposes, nor deductible by the Defendant for income tax purposes.
Should said disability insurance payments be reduced or cease, then until the Defendant's death, the Plaintiff's death, or the Plaintiff's remarriage or cohabitation as provided by statute, whichever shall first occur, the Defendant shall pay to the Plaintiff as alimony, fifty percent (50%) of his income from all sources, after taxes, including but not limited to income from disability payments. Any sums paid as alimony out of disability payments shall continue to be deemed neither taxable to the Plaintiff for income tax purposes nor deductible by Defendant for income tax purposes so long as said disability payments remain nontaxable to the Defendant; and any portion of alimony paid by the Defendant out of income taxable to CT Page 10255 him shall be considered as alimony that is taxable to the Plaintiff for income tax purposes and deductible to the Defendant for income tax purposes.
 In addition, the Plaintiff shall receive fifty percent (50%) of the Defendant's KPMG Peat Marwick pension. This division shall be accomplished by way of a Qualified Domestic Relations Order. The Defendant shall be responsible for preparation of said order with the cost of preparation to be shared equally between the parties. The QDRO shall be submitted to the court for approval and the court shall retain jurisdiction with respect to any disputes with respect to this order and said QDRO.
3. Medical Insurance:
 The Plaintiff shall be entitled to continue her current coverage under the Defendant's group medical plan, at her expense, for the maximum period allowed by law. The Defendant shall cooperate with the Plaintiff's continuation of said coverage under COBRA.
4. Life Insurance:
 For 5 years from the date of this order, and as long as he shall remain insurable, the Defendant shall provide life insurance, at his expense, for the Plaintiff, with the Plaintiff as irrevocable beneficiary in the amount of at least $500,000 and thereafter, for so long as he shall remain obligated to pay alimony in the amount of at least $300,000.
5. Other Property:
 The Plaintiff shall be the owner of the 1993 Land Rover Defender 110, free from any claim of the Defendant, and she shall indemnify and hold the Defendant harmless from any liability pertaining to her use and ownership of that vehicle. The Plaintiff shall be responsible for the payment of the outstanding automobile insurance for 1998 and 1999 for this vehicle as detailed below in "Liabilities."
The Plaintiff shall be the sole owner of the oil CT Page 10256 well interests and stocks listed on her April 13, 2000 affidavit, free from any claim of the defendant. Each party shall keep all other assets listed on their respective financial affidavits, free from any claim of the other. In the event there shall be any disputes concerning personal property, the parties shall mediate the issues before Family Relations. In the event they are unable to reach agreement, they may return to court for further hearing and orders on this issue. The court will retain jurisdiction over the issues of personal property.
5. Liabilities:
 The parties shall be equally responsible for the contingent joint liability to the State of Georgia for income taxes for the calendar years 1992, 1993 and 1994. The parties shall share equally the cost of any legal action to contest this liability, which assessment is under protest.
 The Defendant shall be responsible for and shall pay the joint liability owed to Attorney Brett Dixon, and shall indemnify and hold the Plaintiff harmless from the same. The Plaintiff shall pay the Defendant the sum of $2,928 representing the automobile insurance owed for 1998 and 1999 for the Land Rover. Thereafter, the Defendant shall indemnify and hold the Plaintiff harmless from any liability with regard to this obligation.
 Each party shall be responsible for their own attorney's fees and costs incurred in connection with this action.
 Except as otherwise provided above, each party shall be solely responsible for the debts shown on his/her financial affidavits dated April 13, 2000, and each shall indemnify and hold the other harmless from the same.
HILLER, J.